John M. Morrison
Scott L. Peterson
MORRISON SHERWOOD WILSON DEOLA PLLP
401 N. Last Chance Gulch
Helena, MT 59601
Telephone: (406) 442-3261
Fax: (406) 443-7294
john@mswdlaw.com
speterson@mswdlaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATE DISTRICT COURT
DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ASHLEY BROWN,<br><br>  Plaintiff,<br><br>v.<br><br>St. Peter's Health,<br><br>  Defendant. | Cause No.:_____<br><br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

INTRODUCTION

1. This is a medical negligence case involving severe burning and permanent damage to the Plaintiff's right hand caused by an extremely excessive

application of liquid nitrogen during a cryotherapy procedure performed at the Urgent care facility of Defendant St. Peter's Health.

Case 6:24-cv-00007-KLD   Document 1   Filed 01/16/24   Page 2 of 14

## THE PARTIES

2. Plaintiff Ashley Brown is a citizen and resident of the State of Washington. She is a practicing licensed practical nurse and worked in that capacity in Helena, Montana at the time of the injury described herein.

3. Defendant St. Peter's Health (St. Peter's) is a Montana domestic non-profit corporation with its principal place of business in Helena, Montana.

## JURISDICTION AND VENUE

4. This court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the plaintiffs and all defendants and the amount in controversy exceeds $75,000.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as each defendant has its headquarters and offices, conducts business, and can be found in the District and a substantial part of the events or omissions giving rise to Brown's claims occurred in this judicial district. Venue is further proper under 29 U.S.C. § 1132(e)(2) because Defendants have substantial business contacts within the state of Montana and in this District.

## GENERAL ALLEGATIONS

6. On December 4, 2022, Ashley Brown went to St. Peter's Health Urgent Care to get her warts treated. Earl E. Book, MD, came in and looked at her right hand to observe the warts. There were eight of them. Ashley told Dr. Book that she had the warts treated previously. The most recent time was at another urgent care clinic, Best Med, where they used "The Q-Tip," and she said it was not effective. Ashley also had an appointment with a dermatologist at the end of December.

7. Dr. Book told Ashley that he liked to go very slow. However, he told Ashley that, if she would like to see his colleague, she likes to hit them "harder." Ashley was unaware of what that meant but agreed to see the other provider. At that point, Risa Dawn Paul, PA-C came in and looked at Ashley's right hand. She asked if Ashley had tried to see a dermatologist. Ashley told PA Paul about the coming appointment with a dermatologist. PA Paul said she was happy to perform the procedure for her that day, and they could handle her follow up care, but also recommended Ashley see the dermatologist as part of her follow up.

8. PA Paul told Ashley she would do *three seven (7) second rounds of liquid nitrogen on each of eight warts* and then commenced that procedure. After PA Paul completed the second round, Ashley told PA Paul she

couldn't move her fingers, couldn't bend them at all, and that her hand felt frozen solid.

9. Dr. Book came in the room at that point and said, "You really do three rounds for seven seconds?" PA Paul replied, "Yes." Dr. Book then sat by Ashley and tried to comfort her while PA Paul started and completed the third round.

10. After the third round, Ashley's hand was swollen, felt frozen in place, and completely numb. Ashley was discharged. Once she got into her car, she cried as she suffered the worst pain she had ever felt. The pain, inability to move her hand and fingers, and the numbness lasted for thirty minutes. Within a few hours after the treatment, the frozen areas on her hand began to blister, and continued to blister through the night. The next morning, her hand was severely blistered, and swollen. The numbness had resolved, but it was still extremely painful.

11. Ashley worked as a night shift rehab nurse, and she went to her shift as usual Monday night, December 5, 2022, at 5:45 pm. Ashley is required to follow safety and precautions for patient safety as well as staff, which includes having to glove up and down continuously. The pain in her hand was almost unbearable, and she cried multiple times throughout her shift.

12. After completing her shift on Tuesday morning, December 6, 2022, Ashley had to drain the blisters on her hand, as she was unable to close her hand, had no dexterity to write or chart, or to complete simple tasks for herself or her daughters. The blistered areas continued to drain, and she performed multiple dressing changes on herself before calling Advanced Practice Dermatology to see if she could obtain an urgent appointment. Her hand had become red, swollen, and warm to the touch.

13. Advanced Practice Dermatology was able to accommodate a same-day appointment with Megan Gittings, FNP-BC, DCNP to address this acute injury. NP Gittings examined Ashley and advised her that the procedure was done three times the recommended amount of time. She advised the warts should have been hit with liquid nitrogen for only two to three seconds, for two or maybe three rounds. NP Gittings attempted to drain the abscess, but nothing came out. Antibiotics were ordered for Ashley and a follow up visit was scheduled for December 9, 2022. NP Gittings noted:

> This is a 34-year-old female who is a new patient.... Patient had warts treated with liquid nitrogen at urgent care on Sunday, December 4th. Patient advised that the provider treated each wart for 7 seconds x 3. Patient now has swelling moving down her arm. The swelling is painful. Blistering is still present. Patient was afraid to go back to urgent care.

14. Ashley started taking her antibiotics on December 7, 2022. She worked her usual shifts on Monday, Tuesday and Wednesday nights, December 5-7, 2022. The staff Ashley worked with helped her by taking on tasks that required her to be gloved up; however, she was still in pain all day. Ashley was not able to complete daily tasks such as opening bottles for her daughters. She was seen in follow up with NP Gittings on the December 9, 2022, and she was taken off work due to the severe risk of infection at her job and her large open wounds. NP Gittings also put in an order for Ashley to see Wound Care.

15. Ashley notified her employer that she was not going to be able to work. This caused concern for Ashley, because her family relied on both her and her husband's income to pay their bills. Going to one income was going to be very financially stressful for her and her family.

16. Ashley continued photographing the progress of the wounds with photos. The largest wound on her hand concerned NP Gittings, who indicated that it may need to be professionally debrided. However, the large chunk of skin came off during her dressing change on December 18, 2022. Earlier that same day, Ashley's primary care provider, Laura Rear, DNP, NP-C,

ordered another round of antibiotics for her, as her hand was again infected. Ashley started the antibiotics again that same day.

17. Ashley traveled to Washington to spend time with her family for Christmas from December 23, 2022, returning home January 3, 2023. Her hand was again infected, and she picked up a third round of antibiotics on January 9, 2023, ordered by NP Gittings. The wounds on her hand continued to close and heal slowly; however, the pain continued. She continued to experience numbness, shooting pains, and extreme pain whenever anything touched where the wounds had been.

18. These are a few of the photos of Ashley's hand during this period:

 

 

19. By January 14, 2023, all her wounds had closed; however, she continued to have a large amount of scarring. She experienced pain daily, numbness often, and shooting pains.

20. Ashley moved to Washington State in early 2023. Dr. Thomas Stocklin-Enright, DO, saw Ashley at the Vancouver Clinic in February and referred her for occupational therapy and for a consultation with a hand surgeon.

21. Ashley was also seen at Vancouver Clinic in March 2023 by Dr. Letita Lansing at the Vancouver clinic, for "Pain, numbness and tingling at the right hand, 3-4 months duration." According to Dr. Lansing: "She notes pain in her second MCP when making a fist. She reports that one of the wounds recurrently opens and closes but denies any drainage." Dr. Lansing further noted:

> Tender to palpation along the second and third MCP joint predominantly over the healed wounds… diminished sensation over healed wound and along dorsum of index and middle finger, and along the volar aspect [of the] index finger…. She continues to have a moderate amount of pain especially over the healing scar. from sports medicine and can follow up with them as needed……

22. Ashley began therapy with Raveen Virdee, OT, at Vancouver Clinic in early November 2023, nearly a year after her hand was injured at St. Peter's. OT Virdee specified difficulties Ashley suffers in daily tasks, such as "washing dish[es], washing hair, any activity that puts pressure on D2 and D3, pulling up pants, holding her phone, tying her shoes, typing, writing."  OT Virdee recorded pain at rest as 2/10 and pain with activity at 5/10.  Current level of function is "independent with ADL's with pain and discomfort." Ashley's patient specific functional scale yielded 4/10 for writing and typing, 2/10 for holding her phone, 2/10 for pulling up her pants and performing other small grip activity. These disabilities and difficulties existed in the context of work that required keyboarding, writing, phone use, repetitive or prolonged grasping, filing and fine motor manipulation. Ms. Virdee assigned Ashley a "Quick Dash Score" of 38.64, where zero is normal and 100 is totally disabled. She observed "scarring across D2-D3 metacarpophalangeal joints, white in center and hyperpigmentation

around the edges; ... tender to palpation at scar." With the unaffected hand being rated 10/10 for normal sensation, Ashley's hand numbness and tingling in the region of the scar was described as 2/10.

Virdee's further noted: "...right hand pain following complications from a wart removal. ...a range of movement and strength deficit as per measurements... functional deficit as a result of range of movement deficit, strength deficit and sensitivity of the scar in surrounding areas.... hyperpigmentation and whitening of the scar... tightness in the area surrounding the scar kind of limiting movement." Virdee recommended six treatment sessions over six weeks to progress toward maximum recovery. These included soft tissue mobilization to decrease pain and edema, reduce muscle spasm and increase mobility, as well as joint mobilizations to decrease pain and/or increase ROM, in therapeutic exercises to increase functional mobility and strength with neuromuscular reeducation, scar mobilization/massage, paraffin bath and taping techniques. Goals included reducing symptoms and increasing grip strength.

23. Although she is currently on maternity leave, Ashley continues to work as nurse and plans to continue her profession for as long as she is able. Her

hand injury significantly interferes with her ability to perform essential nursing functions, such as patient transfers, intravenous work requiring fine motor skills, and CPR compressions.

24. Ashley's hand injury has caused ongoing trauma in her life.

25. Ashley was injured because PA Paul blasted the back of Ashley's hand with freezing liquid nitrogen for <u>168 seconds</u> in a single sitting. That is three times seven (21) seconds of blast on each of eight closely located warts. The Fahrenheit temperature of liquid nitrogen is <u>473° below zero</u>. The standard of care requires that each of the blasts be more like two seconds and that such a large number of closely located warts be addressed in separate successive sessions.

26. When the procedure is performed correctly, a liquid nitrogen blast of two to three seconds creates a white ball that is then left to remain frozen for 10 to 60 seconds before it thaws and another two second blast of liquid nitrogen is applied.

27. At all material times, PA Paul and Dr. Book were employees and agents of St. Peter's Health. All of their acts and omissions described herein were done within the course and scope of their employment.

## COUNT I
## MEDICAL NEGLIGENCE

28. Plaintiff incorporates herein by reference all other paragraphs as if fully set forth.

29. The medical care provided to plaintiff by Saint Peter's through PA Paul and Dr. Book fell below the applicable standard of reasonable care and was negligent.

30. As a direct and legal result of the negligence of Saint Peter's, Plaintiff has suffered significant permanent injuries resulting in medical expenses, lost earning capacity, lost ability to perform household services, lost enjoyment of life, pain and suffering and emotional distress. Accordingly, Plaintiff is entitled to compensation in the form of special and general damages in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully prays this Court to enter judgment in her favor and award damages including:

1. Past and future medical expenses;
2. Lost earnings;
3. Lost earning capacity;
4. Lost value of household services;

5. Pain and suffering;

6. Emotional distress;

7. Lost enjoyment of life;

8. Any other special and general damages;

9. Attorney fees and costs;

10. Such other amounts as this court may deem to be just and owning.

Dated this 16th day of January 2024.

        MORRISON SHERWOOD WILSON DEOLA PLLP

        By:/s/John M. Morrison_____
            John M. Morrison
            Scott L. Peterson
            *Attorneys for Plaintiff*